UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIAN T. SMITH, JONATHAN C. CALIANOS

          Plaintiffs,

vs.                    Case No.  2:11-cv-676-FtM-29DNF

BANK OF AMERICA HOME LOANS a
subsidiary of Bank of America, N.A.,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,

          Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc. Motion to Dismiss Plaintiff's Second Amended Verified and Sworn Complaint (Doc. #59) filed on February 1, 2013.  Also before the Court is defendant Fannie Mae's Motion to Dismiss Plaintiffs' Second Amended Verified & Sworn Complaint filed on February 21, 2013.  (Doc. #66.)  On March 12, 2013[1], plaintiffs filed a response to both motions.  (Doc. #69.)  For the reasons set forth below, Fannie Mae's motion is granted and Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc.'s motion is granted in part and denied in part.

_____

[1]On February 20, 2012, the Court granted the plaintiffs an extension of time to file their response to Bank of America, N.A.'s and Mortgage Electronic Registration Systems, Inc.'s motion to dismiss.  (Doc. #65.)  Therefore, the response is timely.

**I.**

The Second Amended Complaint (Doc. #53) alleges the following:

On August 4, 2005, plaintiffs Brian T. Smith and Jonathan C. Calianos (collectively, plaintiffs) purchased a condominium located at 28111 Tamberine Court, Unit 1321 (the property), Bonita Springs, Florida for the sum of $399,900.00.  To finance the property, plaintiffs obtained a $240,000.00 loan from MLD Mortgage, Inc. (MLD).  Plaintiffs executed a promissory note in favor of MLD which gave MLD a first mortgage on the Property.  The promissory note is dated August 4, 2005 (the Original Note).  Within a month of closing, the plaintiffs were directed to make all payments to Countrywide Home Loans (Countrywide).  Plaintiffs never made any payments to MLD Mortgage.  Plaintiffs made payments to Countrywide until Countrywide mailed the original note to the plaintiffs.[2]  The Original Note was marked with a "void" stamp.  The Original Note, bearing the "void" stamp, is in the possession of Callianos, and it is plaintiffs' position that the note is not enforceable.

Thereafter, on October 11, 2005, an assignment of mortgage was recorded in the Lee County land evidence records showing that MLD Mortgage, Inc. assigned the mortgage to defendant Mortgage Electronic Registration System (MERS).  On February 10, 2012, MERS,

---

[2]Plaintiffs do not allege the date that the Original Note was mailed to them.

at the direction of Bank of America, assigned the mortgage to Bank of America.

On an undisclosed date, but sometime after receiving the voided note from Countrywide, Calianos began to receive payment requests from Bank of America.  Both plaintiffs questioned Bank of America's authority to collect on the void note, but were told by the Bank that the Original Note was in its possession.  Plaintiffs requested a copy of the Original Note that was alleged to be in Bank of America's possession, and were provided with a copy of a note that was identical to the Original Note except it was not stamped "void", did not contain an "allonge",  had "**Generated by PDFKit.NET Evaluation**" and "Account No. 104153740" printed on it, and contained a stamp which stated "We hereby certify that this is a true and exact copy of the original.  By _____Rm___ First Title Southwest Florida." (Compl, Exh. C.)  Plaintiffs allege that this is not a copy of the true Original Note, and instead, the true Original Note is the voided copy in Callianos's possession. Nonetheless, plaintiffs made the requested payments to Bank of America "under protest" to avoid adverse action to their credit.

In order to stop Bank of America from seeking payment on the note, plaintiffs initiated this action by filing a Complaint on November 30, 2011. (Doc. #1.)  Plaintiffs stopped making payments to Bank of America after this action was initiated, and instead placed the alleged monies owed in an escrow account.  Plaintiffs

allege that in retaliation for this action, Bank of America began to make negative reports to plaintiff's credit bureaus resulting in decreased credit scores to both plaintiffs.  These decreased credit scores are alleged to have caused financial damages including increased interest rates for plaintiffs. In addition, after this action was initiated, Bank of America produced a "Superceding Promissory Note" (the Superceding Note) and alleged that it was seeking payment from plaintiffs under this note.   The plaintiffs allege that the Superceding Note is forged and unenforceable.

As a result, plaintiffs filed an Amended Complaint on February 21, 2012.  (Doc. #17.)  The Amended Complaint was dismissed with leave to amend on December 19, 2012 (Doc. #51) and a Second Amended Complaint was filed on January 9, 2013.  (Doc. #53.)  The Second Amended Complaint seeks declaratory judgment (Count I) and asserts violations of the Fair Credit Reporting Act (FCRA)(Count II), civil fraud (Count III), federal civil Racketeer Influenced and Corrupt Organizations Act (RICO) (Count IV), and the Real Estate Settlement Procedures Act (RESPA) (Count V).

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.  <u>See also</u> <u>Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

-5-

**III.**

**A.  Claims Against Fannie Mae**

Fannie Mae seeks to dismiss the Complaint because it alleges that the counts do not specifically assert which defendant each count is asserted against.  Further, the Second Amended Complaint lacks any factual allegations that implicate it for any wrongdoing.  Therefore, it has no notice as to which claims, if any, are asserted against it.

The Court agrees.  With respect to Fannie Mae, the only allegations in the Amended Complaint that relate to this defendant are that Fannie Mae is the current holder of the Superceding Note and does not have a legal right to collect money from the plaintiffs. (Doc. #53, ¶65, 66.)  There are no allegations that Fannie Mae has, at any point, tried to collect money from the plaintiffs or otherwise attempted to enforce the Superceding Note.  Because it cannot be ascertained from the allegations in the Second Amended Complaint what claims are brought against Fannie Mae, or the nature of their alleged wrongdoing, the Second Amended Complaint fails to meet Fed. R. Civ. P. 8, and all claims against this party are dismissed without prejudice.

**B. Count One-Declaratory Relief**

Count I does not specifically identify which defendant this count is asserted against, but the factual allegations contained therein make it clear that this count is asserted solely against

-6-

Bank of America.  In Count I, plaintiffs seek declaratory judgment that the Original Note is void and ineffective, the Superceding Note is forged and ineffective, and Bank of America is required to release and discharge the mortgage it holds on the property. Finally, Count I seeks an order requiring Bank of America to refund all sums paid to Bank of America under the Original Note, plus interest.

Bank of America seeks to dismiss Count I because it asserts that plaintiffs have failed to allege an actual controversy that merits review.  In support, plaintiffs cite to <u>Perez v. Indymac FSB</u>, 2012 U.S. Dist. Lexis 158403 (M.D. Fla. Nov. 5, 2012) for the proposition that there is not actual controversy until foreclosure proceedings have been initiated.  Furthermore, Bank of America asserts that to the extent the Superceding Note is forged, the Original Note is clearly enforceable because it would have been unintentionally or mistakenly cancelled, given that plaintiffs have failed to allege that they have made a full payment.  Finally, Bank of America alleges that plaintiffs cannot maintain a claim because they ratified the debt by making payments to Bank of America.

The Court finds that, at this stage of the litigation, plaintiffs have stated a plausible claim for declaratory relief.

If jurisdiction otherwise exists, a federal district court may issue declaratory relief pursuant to the

Declaratory Judgment Act.[3]  To establish the existence of
an  actual  controversy  within  the  meaning  of  the
Declaratory Judgment Act, the party invoking a federal
court's authority must show: (1) that they personally
have  suffered  some  actual  or  threatened  injury  as  a
result of the alleged conduct of the defendant; (2) that
the injury fairly can be traced to the challenged action;
and (3) that it is likely to be redressed by a favorable
decision.

State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr.,

Inc., 427 F. App'x 714, 721 (11th Cir. 2011)(citations and internal

quotations omitted).

Perez is distinguishable.   Therefore, the plaintiff did not

challenge the underlying debt.   Rather, plaintiff challenged

various transfers of the debt which plaintiffs alleged were void

under New York law, not that the underlying debt itself was void.

Here, plaintiffs allege that their debt has been extinguished, yet

Bank of America continues to try to collect on the debt under a

purported Superceding Note which is forged.   Plaintiffs have

clearly alleged that they have suffered actual harm by making

unnecessary payments, and when payments were not made, they have

suffered adverse credit consequences which have resulted in

financial harm.   Plaintiffs have also alleged that this injury can

be fairly traced to Bank of America, and that it is likely to be

---

[3]"In a case of actual controversy within its jurisdiction . .
. any court of the United States . . . may declare the rights and
other  legal  relations  of  any  interested  party  seeking  such
declaration, whether or not further relif is or could be sought."
28 U.S.C. § 2201(a).

redressed by a favorable decision.  <u>See</u> <u>State Farm Mut. Auto. Ins.</u> <u>Co.</u>, 427 F. App'x at 721.

Bank of America's argument that the Original Note must have been mistakenly voided is not appropriate at the Motion to Dismiss stage.  The Court must accept the plaintiffs' allegations as true, and to conclude that the Original Note was accidentally voided would be to insert allegations in the Second Amended complaint which were not alleged by plaintiffs.  It is sufficient that plaintiffs have alleged that Countrywide voided the note, whatever the reason.

Finally, the Court is also not persuaded that plaintiffs have alleged that they ratified the note by making payments to Bank of America.  The Second Amended Complaint specifically alleges that the payments were made "under protest."  The motion to dismiss this claim is denied.

## C.  Count Two- Fair Credit Reporting Act

Count II alleges that Bank of America failed to comply with 15 U.S.C. § 1681 s-2(b), a provision of the Fair Credit Reporting Act. Bank of America seeks to dismiss this Count because it asserts that the allegations are too sparse and do not provide sufficient notice of, or a plausible case for, a violation of the FCRA.  Further, Bank of America asserts that plaintiffs acknowledge that they stopped making payments in 2011, and therefore, the account was

delinquent.  Therefore, the negative reporting by Bank of America was accurate.

Plaintiff's only FCRA claim is that Bank of America, a furnisher of information, failed to conduct a reasonable investigation pursuant to 15 U.S.C. § 1681s-2(b).  To be successful on this claim, plaintiffs must allege that a furnisher of information:

> (1) failed to conduct an investigation with respect to the disputed information; (2) failed to review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of the FCRA; (3) failed to report the results of the investigation to the consumer reporting agency; or, (4) if an item of information disputed by a consumer is found to be inaccurate, incomplete, or cannot be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

Howard v. DirecTV Grp., Inc., No. CV 109-156, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012) (discussing § 1681s-2(b) in the motion to dismiss context).

The Court finds that plaintiffs have failed to place Bank of America on notice as to the basis of this claim.  Plaintiffs have alleged that Bank of America has reported to Experian, TransUnion, and Equifax that plaintiffs were past due for the December 2011 and January 2012 loan payments.  Plaintiffs allege that this was done with knowledge that the validity of the debt was contested.  Plaintiffs further allege that February 15, 2012, Calianos sent a letter to Experian, TransUnion, and Equifax explaining the dispute

and asking the credit reporting agency to reverse the negative credit report during the pendency of the litigation.  On June 25, 2012, Smith did the same.  After receiving the letters, Experian, TransUnion, and Equifax notified Bank of America about the dispute.  Plaintiffs then conclusorily allege that Bank of America failed to comply with its duties under 15 U.S.C. § 1681s-2(b).

In essence, plaintiffs allege how a duty arose for Bank of America to comply with section 1681s-2(b), but fail to adequately allege how Bank of America breached these duties.  It is unclear whether plaintiffs allege that Bank of America failed to conduct any investigation.  To the extent an investigation was conducted, it is unclear how the investigation failed to meet the requirements of the statute.  Therefore, plaintiffs have failed to put Bank of America on notice as to the nature of their alleged violation of 15 U.S.C. § 1681s-2(b).  Accordingly, this Count fails to meet the standards set forth in Fed. R. Civ. P. 8, and the motion to dismiss this count is granted without prejudice.

## C.  Count Three: Fraud

Count III asserts a cause of action against Bank of America for fraud.  Count III alleges that Bank of America made fraudulent statements to plaintiffs that it held the Original Note, that it could commence foreclosure proceedings if plaintiffs failed to make payments, and that it had the authority to report delinquent payments to the credit bureaus, and charge late fees and other

charges.   (Doc. #53, ¶109.)   These statements are alleged to be false because Bank of America "only justified its actions by reference to a copy of the Void Note in its file, and as such, it had no legal right to do any of the actions contained in the [false] statements."   (Id. at ¶110.)

Fed. R. Civ. P. 9(b) requires fraud allegations to be plead "with particularity."   "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8."   Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006).   "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."   United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006) (internal quotation marks and citations omitted).   See also Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006).   "This means the who, what, when [,] where, and how: the first paragraph of any newspaper story."   Garfield, 466 F.3d at 1262 (citations omitted).   "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."   Corsello v. Lincare, Inc., 428 F.3d 1008, 1012

(11th Cir. 2005), <u>cert. denied</u>, 549 U.S. 810, 127 S.Ct. 42, 166 L.Ed.2d 18 (2006).

The Court finds that Count III meets the heightened pleading standards set forth in Fed. R. Civ. P. 9(b).  Although the Amended Complaint does not allege precise dates as to when alleged fraudulent statements were made, plaintiffs allege the substance of the fradulent statements, the Bank of America representatives who made the statements, and even provide the statement maker's telephone extensions.  (<u>See</u> Doc. #53, ¶¶96-99, 103, 104.)  The Court is also not persuaded that Count III fails because Bank of America's statements were truthful.  Accepting the allegations as true, Bank of America knew the Original Note was void and the Superceding Note was forged.  Nonetheless, Bank of America stated to both plaintiffs that it had a legal right to collect on these documents.  The motion to dismiss on this ground is denied.

**D.  Count Four: Civil Rico**

Count IV asserts a claim against MERS and Bank of America pursuant to the federal civil the Racketeer Influenced and Corrupt Organizations (RICO) statute which  makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c).  In particular, plaintiffs

allege that MERS and Bank of America were engaged in an enterprise which conducted a pattern of racketeering activity including mail and wire fraud.

Bank of America and MERS allege that this count should be dismissed because the essential elements of a RICO claim have not been pled with particularity as required by Rule 9, and otherwise fail to plead the elements of a RICO violation.  Bank of America and MERS asserts that plaintiffs have failed to plead the existence of an "enterprise" within the meaning of the statute.  Further,Bank of America and MERS allege that they held a "presumptively valid note which shields it from any allegation that it knowingly made any false demand for payment".  Defendants further assert that no fraudulent scheme has been alleged because no false statements were made.

The pleading requirements of a civil RICO action have been discussed at some length in Williams v. Mohawk Indus., 465 F.3d 1277, 1282-1291 (11th Cir. 2006), cert. denied, --- U.S. ---- ----, 127 S.Ct. 1381 (2007), 167 L.Ed.2d 174 (2007).  In addition to an impact on interstate or foreign commerce, a civil RICO claim is required to set forth the four requirements of 18 U.S.C. § 1962(c)[4] and the two requirements of 18 U.S.C. § 1964(c).[5]  Id.  The Amended

---

[4](1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

[5](1) the requisite injury in plaintiff's business or property,
(continued...)

Complaint must allege the "conduct of an enterprise" and that the enterprise had a common goal, and that defendants participated in the operation or management of the enterprise itself. <u>Williams</u>, 465 F.3d at 1283-84. The "pattern of racketeering activity" element requires that a civil RICO plaintiff establish "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Congress has defined "racketeering activity" to mean the violation of any of the criminal statutes listed in 18 U.S.C. § 1961(1), which includes wire fraud and mail fraud. Section 1961 requires that a RICO plaintiff establish that a defendant could be convicted for violating the charged predicate statutes. <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 486-88, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); 18 U.S.C. § 1961 (defining racketeering activity to include conduct that is "chargeable" or "indictable" and "offenses" that are "punishable" under various criminal statutes). Therefore, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. <u>See</u> <u>Central Distribs. of Beer v. Conn</u>, 5 F.3d 181, 183-84 (6th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812, (1994). A "pattern" of racketeering activity is shown when defendant commits at least two distinct but related predicate acts. <u>Williams</u>, 465 F.3d at 1283.

---

[5](...continued)
and (2) that such injury was "by reason of" the substantive RICO violation.

Further, to make out a "pattern" of racketerring, plaintiffs must plead at least two related acts of mail or wire fraud, see 18 U.S.C. § 1961(5) and–with respect to each act–to allege with particularity the defendants' intentional participation in a "scheme . . . to defraud [plaintiffs] of money or property" and their use of either the mails or wires to execute the scheme. Douglas Ashphalt Co. v. QORE, Inc., 657 F.3d 1146 (11th Cir. 2011) citing United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007); Fed. R. Civ. P. 9(b).

The Court finds that an enterprise has been adequately pled. "Enterprise", as it is used in the statute, is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. The Second Amended Complaint alleges that Bank of America is a member of MERS and acts at the direction of its members. Further, it alleges that both Bank of America and MERS are corporations and the illegal acts threatened by Bank of America against the plaintiffs could not have been completed without the participation of both parties. (Doc.#53, ¶138.)

The Court further finds that plaintiffs have pled a scheme to defraud with the requisite specificity. In Count IV, plaintiffs allege that these defendants "were involved in a scheme to collect payments from Plaintiffs on a promissory note they knew [Bank of

-16-

America]: (1) did not hold, and (2) was void in any event." (Doc. #53, ¶142.)  This scheme is alleged to have been perpetuated by the use of the mails and telephone.  With respect to wire fraud, plaintiffs allege that MERS and Bank of America used the telephone to perpetrate their fraud, and provide the names of Bank of America representatives, their extension numbers, and the substance of their fraudulent statements.  With respect to mail fraud, plaintiffs allege that they received over 100 monthly billing statements which required minimum monthly payments by the 15th of the month, and threatened fees for failure to pay.  (Doc. #53, ¶147.)  Plaintiffs have further alleged an injury proximately caused by these schemes by alleging that they made over $60,000.00 in unlawful excess payments to Bank of America.  The motion to dismiss on this ground is denied.

**E.  Count Five: RESPA**

Finally, Count Five asserts a cause of action under RESPA. Plaintiffs assert that Calianos provided Bank of America with at least six Qualified Written Requests (QWR), but Bank of America's responses to these requests fail under the statute.  Bank of America asserts that its obligations under RESPA were not triggered because the QWRs related to the validity of the debt rather than a servicing issue.

RESPA imposes certain disclosure obligations on loan services who transfer or assume the servicing of a federally related

mortgage loan.  12 U.S.C. § 2605.  Among those duties is the
obligation to respond to a Qualified Written Request (QWR)
submitted by a borrower.  12 U.S.C. § 2605(e).  Under RESPA, a QWR
is defined as follows:

> [A] qualified written request means a written
> correspondence (other than notice on a payment coupon or
> other payment medium supplied by the servicer) that
> includes, or otherwise enables the servicer to identify,
> the name and account of the borrower, and includes a
> statement of the reasons that the borrower believes the
> account is in error, if applicable, or that provides
> sufficient detail to the servicer regarding information
> relating to the servicing of the loan sought by the
> borrower.

12 U.S.C. § 2605(e)(1)(B).  To state a claim for violation of RESPA
§ 2605(e), plaintiffs must allege facts showing that: (1) defendant
is a loan servicer, (2) plaintiffs sent defendant a valid QWR, (3)
defendant failed to adequately respond within the 20/60 day
statutory period, and (4) plaintiffs are entitled to actual or
statutory damages.  12 U.S.C. § 2605; See Frazile v. EMC Mortg.
Corp., 382 F. App'x 833, 836 (11th Cir. 2010).

By its terms, RESPA applies to requests related to loan
servicing.  RESPA defines "servicing" as "receiving any scheduled
periodic payments from a borrower pursuant to the terms of any loan
. . . and making the payments of principal and interest and such
other payments with respect to the amounts received from the
borrower as may be required pursuant to the terms of the loan."  12
U.S.C. § 2605(i)(3).  "Not all requests that relate to the loan are
related to the servicing of the loan."  Williams v. Wells Fargo,

No. C 10-00399 JF (HRL), 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010) (citation omitted).  "A written inquiry that does not relate to servicing is not a QWR."  Lettenmaier v. Federal Home Loan Mortg. Corp., No. CV-11-156-HZ, 2011 WL 3476648, at *11 (D. Or. Aug. 8, 2011).  "A loan servicer only has a duty to respond if the information request is related to loan servicing."  Copeland v. Lehman Bros. Bank, FSB, No. 09-1774-WQH-RBB, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010).

The Eleventh Circuit has not addressed the issue of whether RESPA requires a loan servicer to provide information concerning loan validity, but courts that have addressed the issue almost unanimously hold that RESPA does not require a loan servicer to do so.  See e.g., Ros v. Deutsche Bank Nat. Trust Co., 2013 WL 3288563 (June 18, 2013), Consumer Solutions Reo, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009); Au v. Republic State Mortg. Co., --- F. Supp.2d ----, 2013 WL 2420852 (D. Hawai'i, 2013); Thurman v. Barclays Capital Real Estate Corp., 2011 WL 846441, at *4 (E.D. Cal. Mar. 7, 2011); Minson v. CitiMortgage, Inc., 2013 WL 2383658 (D. Md. 2013); Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc., 858 F. Supp.2d 561, 574-75 (D.D. N.C. 2012); Guerra v. Just Mortg., Inc., 2013 WL 1561114 (D. Nev. 2013).

The QWRs are attached to the Complaint.  (Doc. #53, Exh. N.) Attachments to the complaint constitute a part of the pleading. Crenshaw v. Lister, 556 F.3d 1283, 1291 (11th Cir. 2009)(citing

Fed. R. Civ. P. 10(c)).  Within the QWRs, plaintiffs dispute the validity of the debt and allege that Bank of America is seeking to enforce a voided debt.  Because the QWRs do not relate to servicing, as defined under the statute, plaintiffs have failed to state a RESPA claim.

Accordingly, it is now

**ORDERED:**

1.  Fannie Mae's Motion to Dismiss Plaintiffs' Second Amended Verified & Sworn Complaint (Doc. #66) is **GRANTED** and all counts asserted against this defendant are **DISMISSED WITHOUT PREJUDICE.**

2.  Defendants' Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc. Motion to Dismiss Plaintiff's Second Amended Verified and Sworn Complaint  (Doc. #59) is **GRANTED** to the extent it seeks to dismiss Counts II and V and is denied in all other respects.  Counts II and V are **DISMISSED WITHOUT PREJUDICE.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of August, 2013.

Copies:

Counsel of record
Pro se parties

JOHN E. STEELE
United States District Judge