UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIAN T. SMITH and JONATHAN C.
CALIANOS

                 Plaintiffs,

vs.                         Case No.  2:11-cv-676-FtM-29DNF

BANK OF AMERICA, N.A., successor by
merger to BAC Home Loans Servicing,
L.P. and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

                 Defendants.
_____
BANK OF AMERICA, N.A.

                 Third  Party
                 Plaintiff,

vs.

SMITHCAL REALTY TRUST, BRIAN T.
SMITH and JONATHAN C. CALIANOS, in
their representative capacity as
trustees for the SMITHCAL REALTY
TRUST,

                 Third  Party
                 Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for
Summary Judgment (Doc. #104) and Defendants' Motion for Summary
Judgment (Doc. #109) filed on October 15, 2013.  Plaintiffs filed
an Objection to Defendants' Motion for Summary Judgment (Doc. #113)
and defendants filed an Opposition to Plaintiffs' Motion for
Summary Judgment (Doc. #114) on October 29, 2013.  Also before the

Court is Plaintiffs' Motion for Entry of Judgment as a Matter of Law on Third-Party Plaintiffs' Amended Counterclaim (Doc. #132), and Defendants' Motion for Final Dismissal with Prejudice, or in the alternative, for the Entry of an Appropriate Spoliation Remedy (Doc. #136) filed on December 12, 2013.   Defendants filed a Response to Plaintiffs' Motion for Entry of Judgment as a Matter of Law on Third-Party Plaintiffs' Amended Counterclaim (Doc. #150) on December 26, 2013, and plaintiffs filed an Objection to Defendants' Motion for Final Dismissal (Doc. #161) on January 17, 2014.

## I.  Background

On August 4, 2005, plaintiffs Brian T. Smith and Jonathan C. Calianos[1] purchased a condominium located at 28111 Tamberine Court, Unit 1321, Bonita Springs, Florida (the property) for the sum of $399,900.00.   (Doc. #98-1.)   In order to finance the purchase, plaintiffs obtained a loan in the amount of $240,000.00 from MLD Mortgage, Inc. (MLD) by executing a promissory note (the Original Note) that granted MLD a mortgage on the property.   (Id.)   On August 25, 2005, the mortgage was assigned to defendant Mortgage Electronic Registration Systems, Inc. (MERS).   (Doc. #17-3.) Shortly thereafter, MLD sold the loan to Countrywide Home Loans, Inc. (Countrywide) and plaintiffs were directed to make payments to Countrywide Home Loans Servicing, LP.   (Doc. #98, ¶ 14; Doc. #44-2,

---

[1]Although plaintiffs are proceeding pro se, Calianos is a licensed attorney in the Commonwealth of Massachusetts.

¶ 4.)   In October 2009, Countrywide Home Loans Servicing, LP, merged into BAC Home Loans Servicing, LP, and on July 1, 2011, BAC Home Loans Servicing, LP, merged into defendant Bank of America, N.A. (Bank of America).  Bank of America then began servicing the loan under its own name.  (Doc. #44-2, ¶ 4.)

On September 22, 2005, Countrywide sold the loan to the Federal Home Loan Mortgage Corporation (Freddie Mac).  (Doc. #44-1, ¶¶ 4-5.)  The Original Note, however, did not comply with Freddie Mac's guidelines and needed to be re-executed before the sale could be finalized.  Countrywide and MLD asked Calianos to sign a corrected note, but he refused to do so unless the Original Note was returned to him prior to the execution of the corrected note. (Id. ¶¶ 6-9.)  Countrywide was unable to promptly obtain a corrected note and was forced to repurchase the loan on November 29, 2005.  (Id. ¶ 9.)

Countrywide's records state that MLD advised Countrywide that Calianos agreed to re-execute the note and that Countrywide received a new note that superseded and replaced the Original Note (the Superseding Note), together with an allonge from MLD to Countrywide, on or about April 14, 2006.  (Id. ¶¶ 11-12.)  After receiving the Superseding Note, Countrywide released the Original Note to MLD and sold the loan to the Federal National Mortgage Association (Fannie Mae) on November 10, 2006.  (Id. ¶¶ 14-15.)

The Original Note was eventually stamped "VOID" and returned to plaintiffs; however, the date on which the note was returned remains unknown.  Sometime after receiving the Original Note, plaintiffs began receiving payment requests from Bank of America. Calianos, knowing that he possessed the Original Note, contacted Bank of America to challenge the validity of the debt and asked for a copy of the note on file.[2]  In response to the request, Bank of America sent Calianos a copy of the Original Note that lacked the "VOID" stamp.  (Doc. #98-3.)  Calianos informed Bank of America that he was in possession of the Original Note and stated that it could not seek payment under the note because he was in possession of the voided note.  Bank of America maintained that they had the Original Note on file and continued to seek payment.  Although plaintiffs believed that Bank of America was attempting to collect on a void note, they continued to make monthly payments under the loan to protect their credit.

Despite their persistent challenges, plaintiffs were unable to convince Bank of America that the debt was no longer valid.  Due to the impasse, plaintiffs initiated this action on November 30, 2011, and ceased making payments on the loan.  As a result of plaintiffs' failure to pay, Bank of America reported to the major credit reporting agencies that plaintiffs were 30-days delinquent on their

---

[2]Plaintiffs also do not recall when they began disputing the debt, but defendants posit that it was first challenged on January 28, 2011.

December 2011 payment.   (Doc. #109-1, ¶ 5.)   In response to the reporting, plaintiffs filed a series of disputes regarding the negative reporting on the grounds that Bank of America was attempting to collect payments under a void note.   (Id. ¶ 6.)

Following the commencement of this action, Bank of America discovered the Superseding Note in its files and provided plaintiffs with a copy of the document.   Upon receipt of the Superseding Note, plaintiffs informed counsel for Bank of America that they do not recall being asked to re-execute the note and deny doing so.   (Doc. #98-8.)   Plaintiffs subsequently amended their complaint to dispute the validity of the note.   More specifically, plaintiffs contend that the signatures on the Superseding Note were forged.

Fannie Mae is the current owner of the loan and the mortgage on the property is held by Bank of America.[3]   Bank of America maintains that it managed only one account for the loan with only one principal balance, and as of November 1, 2012, the unpaid principal on the loan was $239,872.54.   (Doc. #44-2, ¶¶ 8, 10.) Plaintiffs, however, believe that they paid off the loan, but have offered nothing more than an assertion of payment.

Plaintiffs are now proceeding on their Third Amended Complaint against Bank of America and MERS.   (Doc. #98.)   In Count I of the

---

[3]MERS assigned the mortgage to Bank of America on February 10, 2012.   (Doc. #44-2, ¶ 6.)

Third Amended Complaint, plaintiffs seek a declaratory judgment against Bank of America releasing and discharging the mortgage attached to the property.  Count II asserts that Bank of America violated the Fair Credit Reporting Act (FCRA) and Count III alleges that Bank of America committed civil fraud.  In Count IV, the final count of the Third Amended Complaint, plaintiffs assert a claim against Bank of America and MERS pursuant to the federal civil Racketeer Influenced and Corrupt Organizations Act (RICO).

On November 13, 2013, Bank of America filed an amended counterclaim against Smith and Calianos, and a third-party complaint against the SmithCal Realty Trust and Smith and Calianos in their representative capacity as trustees for the trust.  (Doc. #120.)  The Amended Counterclaim and Third-Party Complaint asserts claims for declaratory relief, unjust enrichment/constructive trust, and breach of contract.  (Id.)

The Court will first address defendants' motion for final dismissal or spoliation sanctions followed by the cross-motions for summary judgment.  The Court will conclude by addressing plaintiffs' motion  for entry of judgment as a matter of law.

## II.  Motion for Final Dismissal or Spoliation Sanctions

Defendants request that the Court dismiss plaintiffs' claims with prejudice, or in the alternative, enter an appropriate spoliation remedy because plaintiffs admitted that they intentionally destroyed evidence relevant to their claims.

Spoliation is the intentional destruction of evidence or the significant and meaningful alteration of a document or instrument. Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1308 (11th Cir. 2003). In order to establish spoliation, the moving party must prove that: (1) the evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant's prima facie case or defense. Se. Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009). The imposition of sanctions for spoliation is only appropriate when there is evidence of bad faith. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). Mere negligence in losing or destroying records is not enough for an adverse inference instruction. Bashir v. AMTRAK, 119 F.3d 929, 931 (11th Cir. 1997).

Defendants assert that plaintiffs admitted during discovery that they intentionally destroyed evidence regarding their alleged payment of the loan. During his deposition, Calianos testified that he honestly thinks that the loan was paid off, but cannot prove it one way or another because he generally endorses third party checks to the creditor to pay off debts, a method of payment that does not leave a paper trail. When asked if he could look to see what deals had closed during the time frame in which he believes the loan was paid that might have enabled him to pay off the debt, Calianos responded that "it's not a paper trail I would

have.   There's no way I would be able to do this."   Calianos
further stated that he would have destroyed his records regarding
any deals during the relevant period after seven years.   (Doc.
#136-1, Calianos Dep. 41:1-20, Nov. 5, 2012.)

According to defendants, this testimony establishes that
documents relating to plaintiffs' assertion of payment once existed
and that the document were destroyed in bad faith.   The Court
disagrees.   The testimony reveals that Calianos may have destroyed
the records of other business deals during the relevant time period
and that it may have been relevant to the issues at hand, but the
testimony does not support a finding of bad faith.   The evidence
that was allegedly destroyed is, as discussed below, vital to
plaintiffs' case and the prejudice created by the intentional
destruction of such evidence, if it even existed, would be more
felt by plaintiffs than defendants.   Plaintiffs may have been
careless or negligent in the maintenance of their records, but this
does not amount to bad faith; therefore, defendants' motion for
final dismissal or spoliations sanctions is denied.

## III.  Cross-Motions for Summary Judgment

### A.  Standard of Review

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."   Fed. R. Civ. P. 56(c).   "An issue of fact is 'genuine'' if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from

undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### B.  Count I - Declaratory Relief

Plaintiffs claim that they are entitled to summary judgment on Count I of the Third Amended Complaint because Bank of America is not the holder of a valid note nor does it represent the holder of a valid note.  In support of their position, plaintiffs assert that they are in possession of the Original Note and that the Superseding Note cannot be enforced because it is a forgery.  Bank of America, however, contends that plaintiffs' theory of a forged instrument is irrelevant because the debt was neither satisfied nor intentionally discharged.  Bank of America further asserts that it is entitled to summary judgment on its claim for declaratory relief because plaintiffs have failed to pay off the debt and there is no evidence that debt was intentionally discharged.

In Florida, the enforceability of a negotiable instrument is governed by the Uniform Commercial Code (UCC).  The UCC provides that both the holder of an instrument and a nonholder in possession of the instrument who has the rights of a holder are entitled to enforce a negotiable instrument.  Fla. Stat. § 673.3011.  According to plaintiffs, Bank of America is not entitled to collect on the debt because it is no longer the holder of a valid note.  It is undisputed that plaintiffs are in possession of the Original Note, but a question remains as to whether the obligation to pay under the instrument was discharged.

The obligation to pay an instrument may be discharged by payment or by an intentional voluntary act of the person entitled to enforce instrument.  See Fla. Stat. §§ 673.6021(1), 673.6041(1)(a).  Such voluntary acts include the surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge.  Fla. Stat. § 673.6041(1)(a).  The cancellation or renunciation of a promissory note is ineffective if it is unintentional or procured by mistake.  All Real Estate Title Servs., Inc. v. Minh Quang Vuu, 67 So. 3d 260, 262 (Fla. 2d DCA 2010) (citing Gover v. Home & City Sav. Bank, 574 So. 2d 306, 306 (Fla. 1st DCA 1991)).  Accordingly, if the evidence shows that the debt was not satisfied or intentionally discharged, plaintiffs

remain liable for the obligation and the authenticity of the Superseding Note becomes irrelevant. After reviewing the record and the Amended Joint Pretrial Statement, the Court concludes that there is a factual dispute as to whether the debt was satisfied or intentionally discharged. (Doc. #169, p. 9.) Because there is a dispute of material fact, the cross-motions for summary judgment as to Count I are denied.

### C.  Count II - Fair Credit Reporting Act

Under 15 U.S.C. § 1681s-2(b) of the FCRA, a furnisher of credit information must conduct an investigation after receiving notice that a consumer disputes certain credit information. 15 U.S.C. § 1681-2(b)(1). In Count II of the Third Amended Complaint, plaintiffs allege that Bank of America reported them 30 days late for both December 2011 and January 2012, and willfully failed to conduct any investigation after receiving notice of their dispute.

Bank of America contends that it is entitled to summary judgment on Count II because the undisputed evidence shows that an investigation was completed for each dispute filed. In support of its contentions, Bank of America submitted the affidavit of Jane Cashel, an operations team manager at Bank of America. (Doc. #109-1.) The affidavit states that Bank of America only reported plaintiffs 30 days delinquent on their December 2011 loan payment and that no further reports of delinquencies were made. The affidavit further states that Bank of America received six dispute

notifications challenging the validity of the debt and that it investigated each dispute by reviewing its servicing system, the payment history profile and/or payment rating.  On all such occasions, the servicing system reflected that plaintiffs were 30 days delinquent on January 12, 2012, and the results of the investigations were reported to the credit reporting agencies. (Id.)

Plaintiffs contend that Ms. Cashel's failure to address the alleged late reporting for January 2012 in her affidavit proves that Bank of America failed to conduct an investigation.  The Court disagrees.  Plaintiffs' argument goes to the adequacy of the investigation, not whether an investigation was conducted.  Because plaintiffs limited Count II to the failure to conduct any investigation, any argument regarding the adequacy of the investigation is irrelevant.  It is also worth noting that plaintiffs' dispute notifications only challenged the validity of the debt, not that the alleged reporting for January 2012 was erroneous.  Due to the absence of any evidence showing that Bank of America failed to conduct any investigation, the Court finds that summary judgment in favor of Bank of America is appropriate as to this count.

### D.  Count III - Fraud

Bank of America contends that it is entitled to summary judgment on plaintiffs' claim for fraud because there is no

evidence of an actionable misrepresentation and even if there was an actionable misrepresentation, plaintiffs admitted that they did not rely on any of the statements.  In response, plaintiffs simply assert that the Court determined that they have adequately pled a claim for fraud and that they can prove all of the alleged facts.

There is a dispute as to whether Florida law or Massachusetts law governs the claim for fraud due to the fact that plaintiffs live in Massachusetts.  The laws governing a claim for fraud in both jurisdictions are nearly identical except that Florida law allows for an award of punitive damages and Massachusetts law does not.  After reviewing defendants' motion for summary judgment, the Court concludes that it does not need to resolve this issue because summary judgment is due to be granted under the laws of both jurisdictions.

In order to prevail on a claim for fraudulent misrepresentation, a plaintiff must prove:  (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.  See Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010); Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1134 (Mass. 2005) (citations omitted).  Plaintiffs allege that Bank of America's false statements of material fact include its assertion

-14-

that it held the Original Note and could enforce it, and that it could make negative reports to credit reporting agencies, commence foreclosure proceedings, conduct property inspections, and charge late fees in the event of nonpayment.

Generally, a false statement concerning a material fact is only actionable if it is based on a past or existing fact, not a statement of opinion or promise of future action. <u>See Azar v. National City Bank</u>, 382 F. App'x 880, 884 (11th Cir. 2010) (citing <u>Mejia v. Jurich</u>, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001)); <u>Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.</u>, 918 N.E.2d 36, 49 (Mass. 2009) (holding that false statements of opinion, of conditions to exist in the future, and promises to perform an act cannot sustain a claim of fraud). Bank of America's statement that it held the Original Note qualifies as a false statement of a past or existing fact, but the remaining statements do not. Any statement regarding what could happen in the event of nonpayment constitutes a promise of future action and cannot sustain plaintiffs' claim; thus, plaintiffs are limited to Bank of America's statement that it held and could enforce the Original Note.

Bank of America routinely told plaintiffs that it was in possession of and could enforce the Original Note, but in retrospect, it is clear that it did not possess the Original Note. This, however, does not necessarily mean that the representations

were false or made with the intent to deceive.  Plaintiffs assert in their pleading that Bank of America "knew there was a serious question" as to whether the copy of the Original Note it was relying on was enforceable.  (Doc. #98, ¶ 110.)  However, the undisputed evidence shows that MLD sent Countrywide the Superseding Note with an allonge in April 2006 and that the loan was then sold to Fannie Mae.  Under these circumstances, Bank of America was entitled to enforce the Superseding Note because it had no reason to question the authenticity of the instrument.  See Fla. Stat. § 673.3021(1) (a "holder in due course" is a holder who takes an instrument without "apparent evidence of forgery or alternation" for value, in good faith, and without notice of certain claims and defenses); Fla Stat. § 673.3011 (the holder of an instrument and a nonholder in possession of the instrument who has the rights of a holder are entitled to enforce a negotiable instrument).  See also Fla. Stat. § 673.3081(1) ("the signature [on an instrument] is presumed to be authentic and authorized . . . .").  Bank of America may have been negligent in discovering the Superseding Note at such a late time, but this discrepancy does not convert Bank of America's mistaken basis for enforcement of the debt into the fraudulent or deceitful conduct alleged.  Because Bank of America was in possession of a presumptively valid Superseding Note, and there is no evidence that Bank of America knew or should have known

otherwise at the time, its statements as a matter of law do not amount to false statements of material fact.

Plaintiffs' claim for fraud also fails because the undisputed evidence shows that plaintiffs did not rely on any of the representations regarding the Original Note.  Generally, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." Butler, 44 So. 3d at 105 (citing Besett v. Basnett, 389 So. 2d 995, 998 (Fla. 1980)).  See also Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F. Supp. 2d 236, 242-243 (D. Mass. 1999) (same) (applying Mass. law).  The evidence undeniably shows that plaintiffs knew they were in possession of the Original Note and even attempted to convince Bank of America of that fact.  (See Doc. #98, ¶¶ 19-27; Doc. #109-3: Calianos Dep. 34:24-37:1, Nov. 5, 2012.)  Furthermore, plaintiffs believed that Bank of America could not collect under the note and acknowledged that they continued to make payments under protest to protect their credit.  (Doc. #98, ¶ 23.)  Based on plaintiffs' admissions, it is clear that they did not rely on the truth of Bank of America's statements regarding possession of the Original Note; thus, plaintiffs are unable to prove reliance. Because plaintiffs are unable to establish a false statement of

material fact or reliance on a false statement of material fact, defendants' motion for summary judgment as to Count III is granted.

### E.  Count IV - Civil RICO

Defendants assert that they are entitled to summary judgment as to Count IV because plaintiffs have failed show a single element of a RICO claim.  In response to defendants' argument, plaintiffs again argue that the motion should be denied because the Court previously determined that they have stated a plausible claim and can prove all of the facts alleged in the complaint, but have failed to come forth with any evidence in support of their assertion.

It is unclear as to which provision of 18 U.S.C. § 1962 plaintiffs are proceeding, because Count IV cites to 18 U.S.C. § 1962(a) but sets forth the standard for a claim brought under 18 U.S.C. § 1962(c).  Despite this ambiguity, defendants contend that plaintiffs lack the evidence to prevail under either provision.

### 1.  18 U.S.C. § 1962(a)

Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income . . . [in the] operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).  An enterprise under § 1962(a) is "something

acquired through the use of illegal activities or by money obtained from illegal activities." NOW v. Scheidler, 510 U.S. 249, 259 (1994). See also Davis-Lynch, Inc. v. Moreno, 667 F.3d 539, 550 (5th Cir. 2012). In other words, a § 1962(a) enterprise is "the victim of unlawful activity," not the vehicle through which that activity is committed. Id. Here, plaintiffs allege that they are the victims of unlawful activity, not Bank of America or MERS. Because plaintiffs have failed present any evidence establishing an enterprise under § 1962(a), the Court finds that defendants are entitled to summary judgment as to a claim under § 1962(a).

### 2.  18 U.S.C. § 1962(c)

Section 1962(c) of the RICO Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a federal civil RICO violation under § 1962(c), the plaintiff must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to "business or property" (6) that was "by reason of" the substantive RICO violation. Williams v. Mohawk Indus., 465 F.3d 1277, 1282 (11th Cir. 2006), cert. denied, 549 U.S. 1260 (2007) (citing 18 U.S.C. §§ 1962(c), 1964(c)). To establish a

pattern of racketeering activity, plaintiffs must establish at least two related acts of mail or wire fraud.  18 U.S.C. § 1961(5).

Defendants contend that plaintiffs claim under § 1962(c) fails because the record is devoid of any acts of mail or wire fraud. Plaintiffs allege that defendants were engaged in a scheme to collect payments from plaintiffs on a promissory note knowing that Bank of America did not hold the note and that it was void in any event.  In order to carry out this scheme, plaintiffs allege that Bank of America and MERS made numerous misrepresentations to plaintiffs using both mail and wire, indicating that they held the Original Note and forced plaintiffs to continue paying under the Original Note through threats of economic harm.

In order to establish mail and wire fraud, a plaintiff must establish (1) defendants' intentional participation in a scheme to defraud (2) the plaintiffs of money or property (3) using interstate mails and wires in furtherance of the scheme (4) resulting in plaintiffs' injury (5) that can be quantified as a specific amount of damages.  See 18 U.S.C. §§ 1341, 1343.  "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property."  United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing United States v. Svete, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009)).

Plaintiffs once again assert that Bank of America committed fraud by attempting to collect a debt under a note that it did not hold.  As previously discussed, Bank of America's assertion that it possessed the Original Note does not amount to a material misrepresentation because it possessed the presumptively valid Superseding Note.   To the extent that plaintiffs claim that defendants made threats of financial harm, the statements identified do not qualify as misrepresentations and cannot sustain plaintiffs' RICO claim.  Plaintiffs have also failed to present any evidence establishing that MERS engaged in any conduct supporting their RICO claim.   The record reflects that MERS was assigned the mortgage executed by plaintiffs on August 23, 2005, and remained in possession of the mortgage until it was transferred to Bank of America on February 10, 2012.   (Docs. ## 17-3, 44-2.)   Bank of America admitted that, with respect to the loans it services, it provides direction to MERS concerning the discharge of mortgage liens.  (Doc. #98-9, p. 6.)  Such conduct merely amounts to normal business activities.  Based on the foregoing, the Court finds that plaintiffs have failed to present any evidence in support of their RICO claim; therefore, defendants motion for summary judgment as to Count IV is granted.

## IV.  Plaintiffs' Motion for Entry of Judgment as a Matter of Law

Plaintiffs seek judgment as to Bank of America's Third Counterclaim, which alleges a claim for breach of contract,

pursuant to Fed. R. Civ. P. 12(b)(6).  Because plaintiffs move for relief pursuant Fed. R. Civ. P. 12(b)(6), the Court will treat and refer to the motion as a motion to dismiss, not a motion for judgment.

On November 27, 2013, plaintiffs filed an Answer to the Amended Counterclaim (Doc. #124) and on December 12, 2013, plaintiffs filed their motion to dismiss (Doc. #132).  A motion to dismiss is improper once a responsive pleading has been filed.  Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002).  An Answer filed contemporaneously with the filing of a Motion to Dismiss renders the motion moot and makes it "procedurally impossible for the Court to rule on the motion to dismiss."  See Brisk v. City of Miami Beach, Fla., 709 F. Supp. 1146, 1147 (S.D. Fla. 1989).  A defendant is not required to file an answer until court disposes of the motion to dismiss.  Lockwood v. Beasley, 211 F. App'x 873 (11th Cir. 2006).  Because plaintiffs' motion to dismiss was filed after their answer, it will be denied as moot.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion for Final Dismissal with Prejudice, or in the alternative, for the Entry of an Appropriate Spoliation Remedy (Doc. #136) is **DENIED.**

2.  Plaintiffs' Motion for Summary Judgment (Doc. #104) is **DENIED**.

3.   Defendants' Motion for Summary Judgment (Doc. #109) is **GRANTED** in part and **DENIED** in part.  Summary judgment is granted as to Counts II, III, and IV.  The motion is otherwise denied.  The Clerk is directed to terminate defendant Mortgage Electronic Registration Systems, Inc. and enter judgment accordingly.

4.   Plaintiffs' Motion for Entry of Judgment as a Matter of Law on Third-Party Plaintiffs' Amended Counterclaim (Doc. #132) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of March, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Pro se plaintiffs
Counsel of record

-23-